**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**CASE NO. 22-CV-60468-RUIZ/STRAUSS**

**KPR U.S., LLC, *et al.*,**

      Plaintiffs,

v.

**LIFESYNC CORPORATION, *et al.*,**

      Defendants.

_____/

**ORDER**

THIS MATTER came before the Court upon Defendants LifeSync Corporation and 3M Company's AIA Motion to Sever and Stay ("Motion") [DE 42].[1]  I have reviewed the Motion, the Response [DE 45] and Reply [DE 52] thereto, and all other pertinent portions of the record.  I also held a hearing on the Motion on June 16, 2023.  For the reasons discussed herein, the Motion [DE 42] will be **DENIED**.

**BACKGROUND**

This is a patent infringement action in which Plaintiffs assert that Defendants have infringed two patents by selling – or using, making, offering to sell, or importing – lead wires with closed-end electrode connectors that are used in cardiac monitoring equipment.  *See* Second Amended Complaint for Patent Infringement [DE 96] ¶¶ 23, 53, 83, 109.  Plaintiffs allege that Defendant Advantage Medical Electronics, LLC ("AME") used to sell the lead wires and that Defendant LifeSync Corporation ("LifeSync"), a related entity, now sells them.  *Id.* ¶¶ 8, 24, 54.  As to the other Defendant, 3M Company ("3M"), Plaintiffs allege that it makes, uses, sells, offers

_____

[1] This case has been referred to me to take all action as required by law on the Motion. [DE 104].

to sell, and/or imports "certain" of the lead wires sold by AME and LifeSync. *Id.* ¶¶ 83, 109.  3M is a downstream retailer that purchased the lead wires from AME and/or LifeSync.[2]  It re-sells the lead wires to its customers, but it was not involved in designing or manufacturing the lead wires. *See* Declaration of Robert Atkin [DE 42-2] ¶¶ 6-7.  AME is obligated to defend and indemnify 3M with respect to all claims brought against 3M in this case.  *Id.* ¶ 8.

In the Motion, 3M and LifeSync contend that they were improperly joined as defendants in this action.  Therefore, they contend that the claims against them should be severed from the claims against AME.  According to 3M and LifeSync, AME is the real party in interest (or true defendant), and 3M and LifeSync are merely peripheral defendants.  As such, they contend that the claims against them should not only be severed, but also stayed, pending resolution of the claims against AME.  Consequently, they also request the entry of a protective order relieving them from responding to certain outstanding discovery requests.

## LEGAL STANDARD

In most civil cases, Rule 20 of the Federal Rules of Civil Procedure governs who may be joined as a party in a lawsuit.  However, the America Invents Act ("AIA") governs joinder in patent cases.  *In re Nintendo Co., Ltd.*, 544 F. App'x 934, 939 (Fed. Cir. 2013).  Its joinder provision, which is more stringent than Rule 20, *id.*, provides, in pertinent part, the following:

> (a) Joinder of Accused Infringers.—With respect to any civil action arising under any Act of Congress relating to patents . . . parties that are accused infringers may be joined in one action as defendants or counterclaim defendants, or have their actions consolidated for trial, only if—
>
> (1) any right to relief is asserted against the parties jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences relating to the making, using, importing into

---

[2] While all parties agree that AME sold certain of the allegedly infringing lead wires to 3M, Defendants dispute that LifeSync had any involvement with the lead wires at issue in this case. However, as discussed further below, whether LifeSync was involved is a disputed issue that goes to the merits of the claims against LifeSync.

the United States, offering for sale, or selling of the same accused product or process; and

(2) questions of fact common to all defendants or counterclaim defendants will arise in the action.

35 U.S.C. § 299(a); *see also Nintendo*, 544 F. App'x at 939 (noting, in comparison to Rule 20, that the AIA "adds a requirement that the transaction or occurrence must *relate to making, using, or selling of the same accused product or process*." (emphasis added)).  Additionally, the AIA makes clear that "accused infringers may not be joined in one action as defendants or counterclaim defendants, or have their actions consolidated for trial, based solely on allegations that they each have infringed the patent or patents in suit."  35 U.S.C. § 299(b).

The AIA's joinder requirements are necessary conditions for joinder, but they are not always sufficient.  *Nintendo*, 544 F. App'x at 939.  Even when the technical requirements of § 299(a) are met, "joinder may still be refused 'in the interest of avoiding prejudice and delay, ensuring judicial economy, or safeguarding principles of fundamental fairness.'"  *Id.* (quoting *In re EMC Corp.*, 677 F.3d 1351, 1360 (Fed. Cir. 2012)).  In fact, "Rule 21 provides that a 'court may also sever any claim against a party.'"  *In re Intex Recreation Corp.*, No. 2018-131, 2018 WL 3089215, at *3 (Fed. Cir. June 13, 2018); *see also* Fed. R. Civ. P. 21 ("Misjoinder of parties is not a ground for dismissing an action. On motion or on its own, the court may at any time, on just terms, add or drop a party. The court may also sever any claim against a party.").  Thus, even if § 299(a) is satisfied, or does not apply, courts considering severance "should examine whether keeping claims together in a single case 'would comport with the principles of fundamental fairness or would result in prejudice to either side.'"  *Intex*, 2018 WL 3089215, at *3 (quoting *Nintendo*, 544 F. App'x at 939).

## ANALYSIS

### A. JOINDER UNDER THE AIA

3M and LifeSync contend that the AIA prohibits joinder here because Plaintiffs' lawsuit fails to satisfy both the "same transaction" and "same product" requirements. As discussed herein, however, both requirements are satisfied.

#### 1. Same Transaction, Occurrence, or Series of Transactions or Occurrences

The same transaction requirement is satisfied here. In addressing this requirement in the Motion, Defendants primarily rely on several district court cases where claims against downstream retailers were severed from claims against upstream manufacturers or distributors. They contend these cases demonstrate the claims against 3M should be severed because it is nothing more than a downstream retailer. Not surprisingly, Plaintiffs have cited other district court cases that have refused to sever claims against downstream retailers. With respect to LifeSync, Defendants contend that it did not sell the accused products and that it cannot be joined in this action merely because it is allegedly related to AME. According to Defendants, Plaintiffs also needed to include allegations to pierce the corporate veil in order to join LifeSync as a defendant.

What is noticeably absent from the Motion, however, is the standard that governs whether the same transaction requirement is met. "That standard looks for a 'logical relationship' between the claims linking the underlying facts." *In re Apple Inc.*, 650 F. App'x 771, 775 (Fed. Cir. 2015) (citing *EMC*, 677 F.3d at 1358-59); s*ee also Alexander v. Fulton Cnty., Ga.*, 207 F.3d 1303, 1323 (11th Cir. 2000), *overruled on other grounds by Manders v. Lee*, 338 F.3d 1304 (11th Cir. 2003); *Daker v. Holmes*, No. 20-13601, 2022 WL 2129076, at *5 (11th Cir. June 14, 2022). "The 'logical relationship' standard contemplates a 'liberal approach to the concept of same transaction or

occurrence.'"[3] *Anza Tech., Inc. v. Mushkin, Inc.*, 934 F.3d 1359, 1369 (Fed. Cir. 2019) (citation omitted).  "It asks whether the facts underlying the alleged claims 'share an aggregate of operative facts.'" *Id.* (quoting *EMC*, 677 F.3d at 1359). "For purposes of the logical relationship test, 'all logically related events entitling a person to institute a legal action against another generally are regarded as comprising a transaction or occurrence.'" *Id.* (citation omitted).  "Courts have applied this transaction or occurrence requirement using a case-by-case approach based on a flexible standard that enables the federal courts to promote judicial economy by permitting all reasonably related claims for relief by or against different parties to be tried in a single proceeding." *EMC*, 677 F.3d at 1358 (cleaned up) (citation omitted).

Here, it is evident that the logical relationship standard is satisfied and, therefore, that the same transaction or occurrence requirement has been met.  First, as to LifeSync, Plaintiffs effectively allege that the facts concerning AME and LifeSync are essentially the same.  Plaintiffs allege that AME and LifeSync are related entities that operate out of the same address and that there is close overlap of individuals associated with both entities.   [DE 96] ¶¶ 8, 47, 77. Nonetheless, Plaintiffs are not pursuing LifeSync under a derivative veil-piercing theory.  Rather, in the Second Amended Complaint, Plaintiffs allege that both AME and LifeSync – who are collectively referred to as the "LifeSync Defendants" in the Second Amended Complaint – committed the same conduct by infringing both of Plaintiffs' patents with the same 88+ lead wires.

---

[3] Of course, "under the Federal Rules of Civil Procedure, 'the impulse is toward entertaining the broadest possible scope of action consistent with fairness to the parties; joinder of claims, parties and remedies is strongly encouraged.'" *EMC*, 677 F.3d at 1358 (quoting *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 724 (1966)).

[DE 96] ¶¶ 23, 53.[4]  Plaintiffs also allege that AME previously sold the allegedly infringing products, and that LifeSync is now selling them.  *Id.* ¶¶ 24, 54.  Thus, it is clear that Plaintiffs are pursuing LifeSync on a theory of direct, not derivative, liability.  Although LifeSync vehemently denies that it has ever sold or been involved with the allegedly infringing lead wires at issue in this case, Plaintiffs explicitly allege otherwise.  Thus, LifeSync's involvement, if any, evidently concerns a factual dispute going to the merits of the case.  And motions to sever are not the proper vehicle for resolving factual disputes.  *Cf. Lampliter Dinner Theater, Inc. v. Liberty Mut. Ins. Co.*, 792 F.2d 1036, 1045 (11th Cir. 1986) ("Rule 21 primarily addresses parties, not factfinding.").

Regarding 3M, Plaintiffs allege that it infringed Plaintiffs' patents by selling "certain" of the 88+ lead wires.  According to Plaintiffs, 3M acquired these lead wires directly from the LifeSync Defendants (AME and LifeSync).  Defendants do not dispute that 3M acquired the products from AME.[5]  Thus, a logical relationship clearly exists.  That is because there will be substantial evidentiary overlap between the cases against the parties.  AME and LifeSync are accused of selling the same lead wires, and 3M is accused of selling "certain" of the same lead wires, which it acquired directly from the LifeSync Defendants.  Thus, the same overlapping facts are likely to determine the parties' liability with respect to all of the lead wires that 3M is accused of selling.  In other words, there is an actual link here between the facts underlying the claims against the parties.  The fact that AME has an agreement with 3M under which AME must indemnify 3M with respect to the claims in this case only serves to demonstrate that there is an obvious relationship between the two parties and that their connection is not tenuous or

---

[4] If Defendants view the lumping together of AME and LifeSync to be improper from a pleading standpoint, then that is an issue they should have raised in a motion concerning the adequacy of the pleading.

[5] Defendants only dispute LifeSync's involvement, but again, that is an issue for another day.

coincidental.  Additionally, this is not a situation where Plaintiffs have joined multiple downstream retailer defendants unconnected to one another.  Simply stated, a logical relationship exists, thereby satisfying the same transaction requirement under the AIA.

### 2.  Same Accused Product or Process

The requirement that "any right to relief" relate to the "to the making, using, importing into the United States, offering for sale, or selling of the *same accused product* or process" is easily satisfied here.  The Second Amended Complaint alleges that AME and LifeSync are liable for patent infringement with respect to at least 88 lead wires (it alleges that they sold the same lead wires), and it alleges that 3M is liable for infringement with respect to "certain" – but not necessarily all – of the same lead wires.  [DE 96] ¶¶ 23, 24, 53, 54, 83, 109.  Specifically, as confirmed at the June 16, 2023 hearing, Plaintiffs' claims against 3M pertain to lead wires that 3M acquired directly from AME and (allegedly) LifeSync, which 3M then sold to its customers as it acquired them (i.e., without modifying the lead wires).

What is really in dispute here regarding the same product requirement is whether the requirement is satisfied given that Plaintiffs have only alleged that 3M sells "certain" of the same products.  It is.  Under the AIA joinder statute, the same accused product requirement is satisfied as long as "*any* right to relief" relates to the sale of the "same accused product."  35 U.S.C. § 299(a) (emphasis added).  The statute does not state "every" right to relief, only "any" right to relief.  In fact, the Federal Circuit has found no clear right to severance where the allegations against the defendants involved only "*some* of the same accused products or processes."  *Apple*, 650 F. App'x at 774 (emphasis added).  Thus, the allegations that "certain" of the same products are involved here is sufficient to satisfy § 299(a)'s "same accused product" requirement.

## B. OTHER CONSIDERATIONS

As indicated above, even when the AIA requirements are satisfied (as they are here), "joinder may still be refused 'in the interest of avoiding prejudice and delay, ensuring judicial economy, or safeguarding principles of fundamental fairness.'"  *Nintendo*, 544 F. App'x at 939 (quoting *EMC*, 677 F.3d at 1360).  In the Motion, Defendants contend that these interests warrant a stay as to 3M because it is merely a peripheral defendant.[6]  However, principles of fairness, judicial economy, delay, and prejudice do not warrant a stay or severance in this case.

In certain situations, such considerations may justify a court exercising its discretion to order severance and/or a stay.  For instance, courts "have recognized that the inclusion of a defendant only peripherally involved in, or indirectly connected to, the alleged wrongdoing should not preclude severance and partial transfer to a more convenient forum."  *In re Amazon.com, Inc.*, No. 2022-157, 2022 WL 17688072, at *2 (Fed. Cir. Dec. 15, 2022) (citing *In re Nintendo of Am., Inc.*, 756 F.3d 1363, 1366 (Fed. Cir. 2014)).  "Otherwise, a plaintiff could preclude the court from considering whether transfer would serve the interest of justice by including a defendant, not subject to suit in the more convenient district, who was in some manner peripherally involved in the alleged wrongdoing."  *Id.* (quoting *Wyndham Assocs. v. Bintliff*, 398 F.2d 614, 619 (2d Cir. 1968)).  In other words, "the inclusion of some retailer defendants only peripherally involved in the alleged wrongdoing could prevent a court from following binding precedent that requires transfer to a more convenient venue for trial."  *Nintendo*, 544 F. App'x at 941 (citing *Wyndham*, 398 F.2d at 619).  This case, however, does not present such concerns.  3M has not sought severance and a stay *for the purpose of facilitating a transfer to a different venue*.  In fact, LifeSync

---

[6] Defendants also contend that LifeSync is only a peripheral defendant.  However, for the reasons discussed above, the disputes concerning LifeSync are factual disputes going to the merits of the case.  At this point, LifeSync is alleged to have engaged in the same conduct as AME.

and 3M previously filed a motion seeking dismissal or transfer based on improper venue [DE 19], which was denied [DE 43].[7]

Another situation where the aforementioned principles (fairness, etc.) may warrant severance and/or a stay is where joinder of a large number of claims and/or defendants could deprive the defendants of "a meaningful opportunity to present individualized defenses on issues such as infringement, willfulness, and damages because each defendant will have limited opportunities to present its own defense to the jury." *Nintendo*, 544 F. App'x at 940 (quoting *EMC*, 677 F.3d at 1355). Such a "concern is perhaps even more compelling [where] the vast majority of the defendants are retailers who lack technical information regarding the accused products and have no control over the technology employed." *Id.* Here, although there is no indication that 3M possesses specific technical information regarding the lead wires or that it has control over the technology employed, this is not a case where there are numerous retailer defendants – 3M is the only retailer defendant – or where the number of defendants will deprive 3M (or the other two Defendants) of a meaningful opportunity to present individualized defenses. In fact, all Defendants have raised the same 12 affirmative defenses, *see* [DE 105, 106, 107], and all Defendants are represented by the same counsel.

With that said, there are a couple factors that at least warrant some consideration of 3M's request for severance and a stay. First, as noted above, 3M does appear to be a retailer defendant that lacks technical knowledge regarding, and control over, the design of the lead wires. Moreover, 3M made clear at the June 16, 2023 hearing that, *if the instant Motion is granted*, 3M would stipulate it is liable for infringement as to any products it acquired from AME if AME is found

---

[7] They did not file the instant Motion to sever and stay until the date on which their motion to dismiss or transfer was denied.

liable for infringement as to those products.  Nonetheless, even with such a stipulation or concession, Plaintiff identified – at the hearing – a few areas in which 3M is likely to have at least some discovery relevant to liability.  Therefore, if the Court were to sever and stay the claims against 3M, Plaintiffs would effectively then need to seek such discovery from 3M through a non-party subpoena.  From a judicial economy standpoint, it makes more sense to keep 3M as a party in this case.  Doing so will also avoid unnecessary delay, and it will not result in any major prejudice to 3M, who is represented by the same counsel as the other Defendants.  To the extent denying the Motion will result in any prejudice to 3M, such prejudice is not so great that it warrants granting severance and/or a stay.  Nonetheless, as discussed at the hearing, I do recognize that 3M is likely to have less discovery relevant to liability than AME; consequently, Plaintiffs should consider that some discovery requests that are proportional as to AME may not necessarily be proportional when it comes to 3M.

On balance, fairness and the other relevant considerations weigh against severance and a stay.  Accordingly, having considered applicable law and the parties' arguments regarding severance and a stay, I find that considerations of fairness, judicial economy, prejudice, and delay do not justify severance or a stay of the claims against LifeSync and 3M.

## **CONCLUSION**

For the reasons discussed above, it is **ORDERED and ADJUDGED** that the Motion [DE 42] is **DENIED**.

However, it is further **ORDERED** that:

1.     Given Plaintiffs' acknowledgement at the June 16, 2023 regarding the breadth of the outstanding discovery directed to 3M, 3M need not respond to such discovery.  Instead, Plaintiffs may serve new discovery requests on 3M that are within the scope of permissible

discovery (i.e., Plaintiffs should ensure that its requests to 3M are proportional to the needs of the case, in line with the general discussion at the hearing regarding proportionality).[8]

2.      LifeSync shall respond to any outstanding discovery requests within 14 days of the date of this Order unless the parties agree otherwise.

**DONE AND ORDERED** in Fort Lauderdale, Florida this 24th day of June 2023.

Jared M. Strauss
United States Magistrate Judge

---

[8] This should not be construed to prohibit Plaintiffs from including in their new discovery requests to 3M any requests that were included in prior discovery propounded on 3M (assuming Plaintiffs view such requests to be proportional and otherwise within the scope of discovery).